IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ADONIS MISAEL REYES LOBO, § § | |
| Petitioner, § § | |
| v. § | CAUSE NO. EP-25-CV-561-KC |
| § | |
| KRISTI NOEM et al., § § | |
| Respondents. § | |

# ORDER

On this day, the Court considered Adonis Misael Reyes Lobo's Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1. For the following reasons, the petition is **GRANTED IN PART**.

I.  BACKGROUND

This case involves Reyes Lobo's challenge to Respondents' decision to detain him in immigration custody without a bond hearing. The following facts are derived from the allegations in the Petition, the Response, ECF No. 5, and documentary evidence submitted by Reyes Lobo.

   A.  Arrival in the United States & Immigration Proceedings

Reyes Lobo is a Honduran citizen who entered the United States in 2017 when he was thirteen years old and was deemed an "Unaccompanied Alien Child." Pet. ¶¶ 15, 22. On January 21, 2017, he was served with a Notice to Appear, and removal proceedings were initiated against him. *Id.* ¶ 22; *id.* App. 121–22, ECF No. 1-2. After about a month in detention, Immigration and Customs Enforcement ("ICE") released Reyes Lobo and placed him in the

custody of his father in West Palm Beach, Florida. Pet. ¶ 22. "The removal proceedings did not continue after that date." *Id.*

In 2023, Reyes Lobo's mother filed a Form I-918A Petition for Qualifying Family Member of U-1 Recipient on his behalf. *Id.* ¶ 23. On November 14, 2024, Reyes Lobo was issued a Bona Fide Determination Notice, "indicat[ing] that he warranted favorable exercise of discretion to receive employment authorization and deferred action." *Id.* He subsequently received employment authorization, a Social Security card, and deferred action. *Id.* ¶¶ 23, 25.

On June 20, 2025, Reyes Lobo was detained by ICE during a traffic stop, for which no criminal charges resulted. *Id.* ¶ 24. Following his detention, DHS filed a new Notice to Appear, initiating new removal proceedings in Miami, Florida. *Id.* On August 12, an Immigration Judge ("IJ") in Miami terminated the removal proceedings on the basis that Reyes Lobo is prima facie eligible for a U-visa and has been granted deferred action. *Id.* ¶ 25; *id.* App. 123–124. However, days earlier, Reyes Lobo was transferred from Miami to the El Paso Soft-Sided Facility in El Paso, Texas. Pet. ¶ 25. After transfer, removal proceedings were re-initiated in El Paso. *Id.* On August 25, IJ Stephen Ruhle in El Paso denied a motion to terminate the new proceedings "on the basis that DHS has the prerogative to issue a new Notice to Appear and proceed with removal proceedings." *Id.* ¶ 26. An appeal of this decision has been preserved. *Id.* Reyes Lobo remains detained in El Paso "without the opportunity for a bond hearing before an IJ." *Id.* ¶ 27.

**B.    Procedural History**

On November 18, 2025, Reyes Lobo filed a Petition for a Writ of Habeas Corpus, asking the Court to order his release, or alternatively, order a bond hearing before an immigration judge. *Id.* at 74. Concurrently, Reyes Lobo filed a Motion for Temporary Restraining Order ("TRO"), ECF No. 2, seeking the same relief on an expedited basis. The Court denied the TRO and

ordered Respondents to show cause why the writ should not be granted. Nov. 18, 2025, Order, ECF No. 4. Respondents then filed their Response. Reyes Lobo has a scheduled hearing before an IJ on January 7, 2026. Resp. 2.

To the extent there are any factual disputes, the Court resolves them in Respondents' favor. Therefore, it is unnecessary to hold a hearing. *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II.  DISCUSSION

In his Petition, Reyes Lobo claims that his detention violates (1) the Immigration and Nationality Act ("INA"), (2) his right to due process under the Fifth Amendment, and (3) Respondents' own regulations. Pet. ¶¶ 153–61.

Respondents make three main arguments in opposition: (1) the Court lacks subject matter jurisdiction; (2) Reyes Lobo is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b); and (3) Reyes Lobo's as applied due process challenge fails. Resp. 1–2.

This Court recently decided several petitions for writs of habeas corpus brought by immigration detainees challenging their mandatory detention without a bond hearing under § 1225(b). *See, e.g.*, *Martinez v. Noem* ("*Martinez I*"), No. 3:25-cv-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025). Respondents rely on many of the same arguments that this Court has already addressed and rejected. Where the arguments retread old ground, the Court need not

repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months. *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

### A. Jurisdiction

Respondents argue that the Court is stripped of jurisdiction by 8 U.S.C. §§ 1252(e)(3), 1252(g) and 1252(b)(9). Resp. 10–11. The Court already rejected essentially the same arguments. *See Lala Barros v. Noem*, No. 3:25-cv-488-KC, 2025 WL 3154059, at *2–3 (W.D. Tex. Nov. 10, 2025) (rejecting § 1252(e)(3) argument); *Santiago*, 2025 WL 2792588, at *3–5 (rejecting §§ 1252(g) and 1252(b)(9) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at *4–5 (rejecting § 1252(g) arguments). In their briefing, Respondents fail to distinguish those prior jurisdictional analyses. Resp. 10–11.

Therefore, the Court finds that it has jurisdiction to consider Reyes Lobo's challenge to his detention.

### B. Statutory Interpretation

Next, the parties debate the merits of the Government's new and expansive interpretation of mandatory detention under 8 U.S.C. § 1225(b) and whether Reyes Lobo falls within it. Pet. ¶¶ 28–142; Resp. 3–9. Recently, courts across the country have held that this interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the Government's new interpretation); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

4

Nevertheless, the Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, Reyes Lobo is entitled to due process and succeeds in his as-applied challenge.[1]

### C. Procedural Due Process

Respondents argue that Reyes Lobo "has not raised any colorable claim that mandatory detention under § 1225(b) is unconstitutional as applied to him." Resp. 1. They argue that, even as a matter of due process, for petitioners like Reyes Lobo, "what Congress provided to them by statute satisfies due process." *Id.* at 13. This argument relies on an expansive reading of *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). *See id.* at 11–13. The Court has already rejected such a reading and does so again here. *See Santiago*, 2025 WL 2792588, at *7–10; *Lopez-Arevelo*, 2025 WL 2691828, at *7–10.

Respondents also appear to argue that Reyes Lobo is receiving sufficient due process because he is in full removal proceedings, where "constitutional protections are built in[]." Resp. 12. However, the process Reyes Lobo has received in relation to his removal is entirely distinct from the process he has received in relation to his detention, and whether that process is sufficient under the Fifth Amendment.

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem* ("*Martinez II*"), No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

---

[1] Therefore, and to the extent Reyes Lobo's third claim that Respondents' actions are in violation of their own regulations is brought under the Administrative Procedure Act ("APA"), the Court need not consider that claim, nor Respondents' argument that a habeas petition is not the correct vehicle for an APA claim. *See* Resp. 2 & n.3.

probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

        1.        **Private Interest**

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests." *Martinez II*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  Respondents' position appears to be that Reyes Lobo does not acquire a liberty interest until his detention becomes unreasonably prolonged.  Resp. 13.  However, one's physical freedom is a paramount liberty interest, secured not just by statute but by the Constitution.  *Hamdi*, 542 U.S. at 529.  This liberty interest applies to noncitizens, although to varying degrees.  *Martinez v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (citation omitted).

Therefore, this Court has already held that noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.  *Martinez I*, 2025 WL 2965859, at *4.  And other district courts have done the same.  *See, e.g.*, *Sanchez Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-437, 438, 439, 2025 WL 2688541, at *1, 10 (D. Me. Sept. 22, 2025).  An even greater weight of authority holds that "once released from immigration custody, noncitizens acquire 'a protectable liberty interest in

remaining out of custody on bond.'" *Lopez-Arevelo*, 2025 WL 2691828, at *11 (quoting *Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (collecting cases)).

Reyes Lobo has been living in this country for about eight years, so "it cannot be denied that [he] was 'already in the country.'" *See Martinez v. Hyde*, 2025 WL 2084238, at *8 (quotations omitted). It does not appear that he has any criminal history, and he has spent his entire adolescence here, building a life. *See* Pet. ¶¶ 15, 24; *see generally* Resp. 2. Moreover, about a month after he first entered the country, he was released from custody. Pet. ¶ 22. There is nothing in the record to suggest that he has since violated any condition of his release, such that might justify his re-detention. What is more, Reyes Lobo has a pending U Visa application and USCIS found that his application was bona fide, granted him deferred action and issued an employment authorization document. *Id.* ¶¶ 23, 25. Effectively, Reyes Lobo was allowed to live and work in the country. Under these facts, Reyes Lobo has a strong interest in his liberty. *Cf. Santiago*, 2025 WL 2792588, at *10. Thus, the first *Mathews* factor weighs in favor of Reyes Lobo.

### 2.  Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez II*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. May 21, 2025)).

Here, detaining Reyes Lobo without holding a bond hearing creates a substantial risk that he may be erroneously deprived of his liberty. Without an individualized determination, it cannot be said that detention is warranted in his case. This risk can be easily ameliorated through a bond hearing. Indeed, agency decisionmakers regularly "conduct[] individualized

7

custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3).  Under "decades of DHS's own practices" prior to 2025, noncitizens "who entered without inspection" and were later arrested, just like Reyes Lobo, received bond hearings.  *Chogllo Chafla*, 2025 WL 2688541, at *8 (citations omitted).  This is precisely the type of proceeding that would give Reyes Lobo an opportunity to be heard and to receive a meaningful assessment of whether he is dangerous or likely to abscond, and it would greatly reduce the risk of an erroneous deprivation of his liberty.

Respondents appear to argue that it is better for Reyes Lobo that he is detained because his underlying relief application will be heard "more expeditiously on the detained docket than the non-detained docket."  Resp. 13.  But, those procedures would relate to Reyes Lobo's removal, not his detention.  So, they would not ameliorate the risk that he will be erroneously deprived of his liberty while his removability is assessed.

Therefore, the second *Mathews* factor weighs in favor of Reyes Lobo.

### 3. Government's Interest

Respondents only identify their general interest in enforcing immigration laws as their basis for seeking continued detention without a bond hearing.  *See* Resp. 3.  But again, assuming Respondents' interpretation of the statute is correct, Reyes Lobo's constitutional interest in his liberty exists above and apart from the INA.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted).  Certainly, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community.  The first interest, however, is "weak or nonexistent where removal seems a remote possibility at

best," such as when an individual, like Reyes Lobo, is protected from removal through deferred action. *Santiago*, 2025 WL 2792588, at *12 (citation omitted). Moreover, the decision to release Reyes Lobo eight years ago, in and of itself, "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Lopez-Arevelo*, 2025 WL 2691828, at *11 (quoting *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018)). And in any event, if conditions have changed, any new concerns would be squarely addressed through a bond hearing. Thus, the third *Matthews* factor also weighs in favor of Reyes Lobo.

Because all *Mathews* factors support Reyes Lobo's position, the Court finds that his detention without an individualized assessment of flight risk and dangerousness deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. Thus, he is entitled to a bond hearing. *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at *13.

### D.  Scope of Relief

A majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ.[2] *Id.* at *12 (collecting cases). The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Id.* at *13 (collecting cases); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted). Many courts have also found it appropriate to give the Government a short window in which to

---

[2] Respondents argue that "the only relief available to Petitioner through habeas is release from custody." Resp. 2. The Court has already rejected this argument, *Lala Barros*, 2025 WL 3154059, at *5 n.1, and does so here for the same reasons.

9

complete the bond hearing, or else release the petitioner. *See, e.g.*, *Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (collecting cases). The Court follows this consensus and orders the same remedy here.

### III.  CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, <u>on or before December 11, 2025</u>, Respondents shall either: (1) provide Reyes Lobo with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Reyes Lobo's continued detention; or (2) release Reyes Lobo from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, <u>on or before December 11, 2025</u>, Respondents shall **FILE** notice informing the Court whether Reyes Lobo has been released from custody. If Reyes Lobo has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

<u>**There will be no extensions of the December 11, 2025, deadlines.**</u>

**SO ORDERED**.

**SIGNED this 4th day of December, 2025.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE